UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

MELISSA ANN WHITFIELD,  )
   Plaintiff,  )
     )
v.  )  Case No: 1:14-CV-193
     )  (Mattice/Carter)
CAROLYN W. COLVIN,  )
Acting Commissioner of Social Security,  )
   Defendant.  )

<u>REPORT AND RECOMMENDATION</u>

     This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability and disability insurance benefits, Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423.

     This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Summary Judgment (Doc. 12) and Defendant's Motion for Summary Judgment (Doc. 15).

     For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

<u>Plaintiff's Age, Education, and Past Work Experience</u>

     Plaintiff was born on September 30, 1963, and was 45 years of age as of the alleged onset date of August 6, 2008 (Tr. 130). She was 49 years of age on November 27, 2012, the date of the hearing (Tr. 18). She completed the tenth grade and obtained a GED (Tr. 39-40). Her prior work experience was as a Lift Truck Operator/Porter at a warehouse, an assistant manager in a liquor

store and as a cashier in a Navy Exchange store (Tr. 198).

Applications for Benefits

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-434 (Tr. 122-23). Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration ("SSA"). Plaintiff's claim was denied initially (Tr. 71-74), and on reconsideration (Tr. 76-78). On January 18, 2013, following a hearing, an administrative law judge ("ALJ") found that Plaintiff was not under a "disability" as defined in the Act (Tr. 18-28).

After considering the entire record, the ALJ found that Plaintiff had severe impairments that included degenerative disc disease of the lumbar and cervical spines, fibromyalgia, headaches, depression, and anxiety (Tr. 21). However, the ALJ found that she did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1 (Tr. 22-23).

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b) including alternatively sitting and standing at one-hour intervals, performing no more than occasional postural activity, and performing work in an environment of simple one-and two-step instructions associated with routine and repetitive type work (Tr. 23). The ALJ found that Plaintiff's impairments would not preclude her from performing work that exists in significant numbers in the national economy, including work as an office helper and ticketer in the textile carpet industry (Tr. 28). Consequently, the ALJ found that Plaintiff was not disabled (Tr. 28).

On April 21, 2014, the Appeals Council of the Social Security Administration reviewed additional evidence and denied Plaintiff's request for review (Tr. 1-5). Thus, Plaintiff has

2

exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.

Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Secretary of Health & Human Servs., 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Secretary, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner

3

are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Secretary, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secretary, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.

2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 6, 2008 through her date last insured of December 31, 2010 (20 CFR 404.1571, *et seq*).

3.  Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar and cervical spines, fibromyalgia, headaches, depression and anxiety (20 CFR 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.  After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b). Specifically, I find the claimant was limited to alternately sitting and standing at one-hour intervals, performing no more than occasional

postural activity, in an environment of simple one and two step
procedures associated with routine and repetitive type work.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 30, 1963 and was 47 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 6, 2008, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(g)).

(Tr. 21-28).

## Issue Presented

A. Whether substantial evidence supports the Administrative Law Judge's determination that Plaintiff did not meet or equal Listing 12.04.

B. Whether the ALJ failed to consider Plaintiff's combined physical and mental impairments and erred in his assessment of Plaintiff's Credibility.

C. Whether substantial evidence supports the Commissioner's evaluation of medical opinion evidence because of the failure of the ALJ to properly apply the treating physician rule as it related to Plaintiff's fibromyalgia, considering the provisions of SSR 12-2p.

5

Relevant Facts

Plaintiff's medical treatment is set forth in detail in the ALJ's Administrative Decision (Tr. 37-50) and in the Plaintiff's Brief. I will not repeat it here but will refer to relevant portions of it in the analysis section.

Analysis

A. The Listing Issue:

Plaintiff argues that the ALJ erred in finding that she did not meet Listing 12.04, pertaining to affective disorders, in light of a questionnaire completed by Rhonda Roper, L.C.S.W (Tr. 451-56) (Doc. 121-1 Plaintiff's Brief at 6-7). For reasons that follow, I do not agree. The ALJ specifically considered this listing and I conclude substantial evidence support's his determination that Plaintiff did not meet or equal it (Tr. 22-23).

In relevant part, Listing 12.04 for Affective Disorders requires:

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

    a. Anhedonia or pervasive loss of interest in almost all activities; or
    b. Appetite disturbance with change in weight; or
    c. Sleep disturbance; or
    d. Psychomotor agitation or retardation; or
    e. Decreased energy; or
    f. Feelings of guilt or worthlessness; or
    g. Difficulty concentrating or thinking; or
    h. Thoughts of suicide; or
    i. Hallucination, delusions, or paranoid thinking; or

6

2. Manic syndrome characterized by at least three of the following:

      a. Hyperactivity; or
      b. Pressure of speech; or
      c. Flight of ideas; or
      d. Inflated self-esteem; or
      e. Decreased need for sleep; or
      f. Easy distractibility; or
      g. Involvement in activities that have a high probability or painful consequence which are not recognized; or
      h. Hallucinations, delusions, or paranoid thinking; or

   3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

      *AND*

B. Resulting in *at least two* of the following:

   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Marked difficulties in maintaining concentration, persistence, or pace; or
   4. Repeated episodes of decompensation, each of extended duration

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 12.04 (*emphasis added*).

Plaintiff must satisfy her burden of proving disability by showing that her impairments meet or equal a listed impairment. See 20 C.F.R. § 416.920(a)(4)(iii); Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001) ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder."). An impairment that satisfies only some of the criteria does not qualify, regardless of severity. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990). The disability listings contain over a hundred conditions "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). The listings "streamline

7

the decision process" by shifting the focus away from the individual's ability to work and onto his impairments. Bowen v. Yuckert, 482 U.S. 137, 153 (1987). If a claimant's impairments meet or equal a listed condition, the ALJ must find her disabled. See 20 C.F.R. § 416.920(a)(4)(iii); Zebley, 493 U.S. at 532. "To meet a listing, an impairment must meet all of the listing's specified criteria." Carlson v. Astrue, 604 F.3d 589, 593 (8th Cir. 2010) (quoting Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004)).

After reviewing the record, the ALJ determined that Plaintiff's severe impairments included depression and anxiety limiting her to simple one-and two-step procedures associated with routine and repetitive type work (Tr. 21-23), the ALJ determined that Plaintiff's mental impairments did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation (Tr. 23). The evidence supports the ALJ's findings (Tr. 452-56).

First, Ms. Roper is not an acceptable medical source, but is an "other source" of medical information. See 20 C.F.R. § 404.1513. "Other sources" are medical sources that are not "acceptable" medical sources for the diagnosis of an impairment, such as nurse practitioners, physicians' assistants, and therapists, and the ALJ has discretion to determine the proper weight to accord opinions from "other" sources. Engebrecht v. Comm'r of Soc. Sec., 572 F. App'x 392, 398 (6th Cir. 2014) (citing Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 541 (6th Cir.2007) (citing Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 530 (6th Cir.1997))); 20 C.F.R. § 404.1513(d) (defining "other" sources). "Other" sources "cannot establish the existence of a disability, their perspective should be given weight by the adjudicator and should be "evaluated on key issues such as impairment severity and functional effects, along with the other evidence

8

in the file." Id. (citing SSR 06–03P). The ALJ can give less weight to a mental healthcare provider who is not a doctor. See Culp v. Comm'r of Soc. Sec., 529 F. App'x 750, 751 (6th Cir. 2013).

Second, the record contains the Psychiatric Review Technique of M. Candice Burger, Ph.D. (Tr. 271-284). Ms. Roper reviewed the record and offered an opinion on October 18, 2011 (Tr. 271). Her findings support the failure of Plaintiff to meet listing 12.04. Looking at the requirements of that listing she concluded there was a medical impairment that did not satisfy any of the diagnostic criteria, that disorder being, Depression Not Otherwise Specified (Tr. 274). She concluded Plaintiff had mild restriction of activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace and no episodes of decompensation, each of an extended duration (Tr. 281) This directly contradicted the opinions of Ms. Roper.

Furthermore, the ALJ discussed Plaintiff's activities of daily living and social functioning (Tr. 22-23). The record shows that Plaintiff prepared meals, performed household chores, did laundry, drove, went grocery shopping on a weekly basis, went out to lunch with her spouse, and reported no difficulties getting along with family, friends, neighbors, or others (Tr. 22-23, 145-49). Accordingly, the ALJ determined that Plaintiff had only mild limitations with regard to activities of daily living and social functioning (Tr. 22-23). The ALJ may consider daily activities as one factor in the evaluation of subjective complaints. See Temples v. Comm'r of Soc. Sec., 515 Fed.Appx. 460, 462 (6th Cir. 2013) ("Further, the ALJ did not give undue consideration to Temples' ability to perform day-to-day activities.").

9

The ALJ determined that Plaintiff had only moderate difficulties regarding concentration, persistence, or pace, rather than marked or extreme limitations (Tr. 23). The ALJ also found that Plaintiff experienced no episodes of deterioration or decompensation of extended duration during the period at issue (Tr. 23). The evidence supports the ALJ's findings. The ALJ noted that while Dr. Fisher diagnosed depression and prescribed medications, Plaintiff described her medication as "working fine for her" (Tr. 25, 263). Disability is not supported when an individual's impairments are improved with medications. See Smith v. Comm'r of Soc. Sec. Admin., 564 F. App'x 758, 763 (6th Cir. 2014) (citing Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 927 (6th Cir.1987) (evidence that medical issues can be improved when using prescribed drugs supports denial of disability benefits)).

The ALJ also found it significant that Plaintiff was not referred for specialized mental health treatment (Tr. 26). An ALJ may consider the treatment an individual has had and whether the treatment is indicative of disability See Curler v. Comm'r of Soc. Sec., 561 F. App'x 464, 473 (6th Cir. 2014).

As Plaintiff points out, the ALJ did not specifically address the findings of Ms. Roper in his Decision, which could lead me to recommend a remand. However, I have concluded it is not necessary in this case. It appears that Ms. Roper is a licensed clinical social worker, not an acceptable medical source. Further the Medical Source Statement filed with the Social Security Disability Mental Evaluation shows that it is based on the reports of the patient (Tr. 452-454). It is unclear what other bases Ms. Roper had for her opinion but she is not a Physician. Based on those factors I conclude remanding the case would serve no useful purpose; that it would not change the opinion of the ALJ.

10

Finally, the ALJ noted the lack of significant restrictions recommended by treating or examining physicians and the lack of opinions that Plaintiff was disabled during the relevant period (Tr. 25, 263-66). In this case there was conflicting evidence on the issue of meeting the listing. I conclude, based on the record as a whole, the ALJ properly determined Plaintiff did not meet Listing 12.04.

B.  The Combined Impairment and Credibility Issue:

Plaintiff next argues that the ALJ erred by failing to find that her alleged physical and mental impairments resulted in disabling limitations (Doc. 12-1, Plaintiff's Brief at 7-9). As discussed below, I conclude the ALJ properly considered and determined the credible extent of Plaintiff's limitations.

In adjudicating a claim of disability, the ALJ must assess the Plaintiff's RFC. An RFC assessment is the most the claimant can do after considering the effects of all impairments on the ability to perform work-related tasks. See 20 C.F.R. § 404.1545; Stankoski v. Astrue, 532 F. App'x 614, 619 (6th Cir. 2013). "It is meant to describe the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." Id. (quoting Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 240 (6th Cir. 2002)).

After carefully reviewing the record, the ALJ found that Plaintiff had severe physical and mental impairments, specifically degenerative disc disease of the lumbar and cervical spines, fibromyalgia, headaches, depression and anxiety (Tr. 21). The ALJ then determined that Plaintiff retained the RFC to perform a range of light work with additional exertional and non-exertional limitations (Tr. 23). In making this finding, the ALJ considered Plaintiff's alleged

11

symptoms, but found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible (Tr. 24). See 20 C.F.R. § 404.1529 ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

In summarizing his findings regarding Plaintiff's subjective complaints, the ALJ stated the following:

> Thus, due to the absence of significant objective and laboratory medical findings which provide confirmation of impairments that could reasonably be expected to cause the subjective complaints, and based on the relatively mild to moderate pathology documented by the clinical examinations, and considering the claimant's reported activities of daily living, all of which provide to me an indication as to the intensity, persistence and limitations caused by the subjective complaints, I find the claimant's subjective allegations to be unsupported by the record as a whole . . . .

(Tr. 25).

In finding the evidence does not support the degree of limitation alleged, the ALJ discussed the findings of Plaintiff's rheumatologists in October 2009 (Tr. 24). While Plaintiff had multiple positive trigger points for fibromyalgia, her upper and lower extremity muscle strength was normal and symmetrical with negative straight leg raising; her gait was normal with normal joint ranges of motion; and there was no evidence of joint redness, swelling, or tenderness (Tr. 24, 253-54). In December 2010, Plaintiff had diffuse tender points in the upper and lower extremities and back, but her Plaintiff's doctors encouraged her to be more physically active and her examination also showed normal 5/5 muscle strength, normal gait, intact sensation, and preserved range of motion in all joints of the upper and lower extremities (Tr. 24,

12

237-38). Plaintiff's Rheumatologist indicated she would benefit from exercise and increased activity and exercise were repeatedly recommended (Tr. 238, 245,256, 250 and 253).

Plaintiff also reported to her pain management specialists at Tennessee Valley Bone and Joint that her medications relieved 60 percent of her pain and "make a real difference" in September 2009 (Tr. 24, 371). While Plaintiff complained of ongoing musculoskeletal pain and examinations showed tenderness in the hips and spine, Plaintiff also showed normal 5/5 muscle strength with no more than "some" tenderness to palpation of the cervical spine and resulting in no more than a "slight" decrease in range of motion (Tr. 24, 371). After Plaintiff's date last insured of December 31, 2010, she reported improvement of headache activity, ambulated normally, and showed no motor strength deficit with normal 5/5 strength in December 2011 (Tr. 25, 312). The ALJ further noted that treating sources at Tennessee Valley Bone and Joint did not proffer any physical limitations or restrictions (Tr. 25).

The ALJ also considered Plaintiff's depression and anxiety but found that the evidence did not support a disabling mental health impairment through the date last insured (Tr. 25). As discussed above, the evidence indicated that medication was effective, Plaintiff's treatment was conservative, and that Plaintiff's doctors did not impose any significant or disabling limitations (Tr. 25-26). The ALJ gave Plaintiff the benefit of the doubt and limited her to unskilled tasks or simple one-and two-step procedures of routine and repetitive type work (Tr. 23, 26).

An ALJ may consider the medical evidence in evaluating Plaintiff's subjective complaints, although the ALJ may not reject subjective complaints "solely" on this basis. Kirkland v. Comm'r of Soc. Sec., 528 F. App'x 425, 427 (6th Cir. 2013) (quoting 20 C.F.R.

13

§ 404.1529, and noting that ALJ also considered medical opinion evidence). However, an ALJ may find an individual not credible when, among other reasons, the allegations are inconsistent with the medical evidence. See Temples, 515 F. App'x at 462 ("The ALJ reasonably discounted Temples' testimony concerning the severity of her pain because her testimony was inconsistent with the medical evidence in the record.").

In his evaluation of the record, the ALJ clearly considered the combination of Plaintiff's physical problems. He found that she did indeed have fibromyalgia but did not conclude it to be totally disabling. He found she had depression, but not to the extent alleged. He appeared to assess her credibility on the basis of other medical evidence of record. In a November 1, 2011 Physical Residual Functional Capacity Assessment, Dr. James Millis, a non-examining State Agency Physician, reviewed the record and concluded plaintiff capable of light work (Tr. 291-299). Looking at Plaintiff's symptoms he noted allegations of neck, shoulder and back impairments, but concluded one could expect some limitations but not to the extent alleged on the basis of normal gait and station and 5/5 strength (Tr. 296). He also noted allegations of fibromyalgia, bulging lumbar disc and lumbar spondylosis. After a review of the record, he concluded the RFC of light work considered her alleged pain (Tr. 298). This evidence supports the finding of the ALJ. State agency physicians are experts in the Social Security disability programs and their opinions may be entitled to great weight if the evidence supports their opinions. See 20 C.F.R. 404.1527(e)(2)(I), 416.927(e)(2)(I); Social Security Ruling (SSR) 966p, 1996 WL 374180 (S.S.A.), at *2.

I conclude Plaintiff has not shown that her impairments imposed any limitations not already included in the ALJ's RFC finding and substantial evidence supports the ALJ's

14

evaluation of Plaintiff's combination of impairments and subjective complaints and also supports his determination of her RFC.

C. <u>The Fibromyalgia assessment in light of SSR 12-2p and the Treating Physician Rule</u>:

Finally, Plaintiff argues the Commissioner erred by failing to give the opinions of treating physician, Elizabeth Simpson, D.O., controlling weight, who opined that Plaintiff suffered from limitations beyond those set forth in the ALJ's RFC determination due to pain and limitation associated with fibromyalgia and osteoarthritis (Doc. 12-1 Plaintiff's Brief at 9-17). The forms and questionnaires Plaintiff refers to consist of a "Fibromyalgia Questionnaire," a "Medical Assessment of Ability to do Work-Related Activities (Physical)" form, and a "Pain Limitation Questionnaire" – all dated December 28, 2012 (Tr. 6-13). Plaintiff submitted this evidence to the Appeals Council with her Request for Review of the ALJ's decision, and the Appeals Council included this evidence in the record (Tr. 2, 6-13).

The Appeals Council must consider additional evidence if it is new, material, and relates to a time period before the ALJ's decision. The Appeals Council must also evaluate the entire record including the new evidence and material evidence submitted if it relates to the period on or before the date of the ALJ's decision. It will then review the case if it finds that the ALJ's actions, findings, or conclusion is contrary to the weight of the evidence currently of record. <u>See</u> 20 C.F.R. § 404.970(b).

In this case, the Appeals Council considered the December 28, 2012 records from Dr. Simpson and noted that the ALJ decided Plaintiff's case only through December 31, 2010, Plaintiff's last date insured for disability benefits (Tr. 2, 18-28). Because the new evidence was from a later time, the Appeals Council found that it did not affect the ALJ's decision about

15

whether Plaintiff was disabled at the time she was last insured for disability benefits (Tr. 2). On the basis of the record as a whole, I do not disagree with this conclusion.

Plaintiff argues the fact that Dr. Simpson did not render these opinions until after her date last insured should have no effect as to whether she should be found disabled because Dr. Simpson treated Plaintiff prior to her date last insured and because her opinions are consistent with the overall record of evidence. See Pl.'s Br. at 12-, 237-60, 311-88. However, Dr. Simpson's opinions were rendered nearly two years after Plaintiff's date last insured (Tr. 8, 12, 13, 18-19, 130). Dr. Simpson also did not state or indicate on these forms that her opinion intended to characterize Plaintiff's limitations or condition prior to her date last insured (Tr. 7-13).

For entitlement to Title II benefits, Plaintiff has the additional burden of showing that she was disabled prior to the expiration of her insured status. See Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990); see also, 20 C.F.R. § 404.101(a). When a claimant loses insured status, he or she is simply no longer eligible for benefits for disability arising thereafter. See Moon, 923 F.2d at 1182. Information received after the expiration of insured status that does not relate to the claimant's condition on the date last insured does not require remand. See Johnson v. Comm'r of Soc. Sec., 535 F. App'x 498, 509 (6th Cir. 2013); Strong v. Soc. Sec. Admin., 88 F. App'x 841, 845 (6th Cir.2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value."). Dr. Simpson did not even fully set forth Plaintiff's limitations due to osteoarthritis or fibromyalgia. The doctor left blank questions pertaining to how much weight Plaintiff could lift or carry, or how long Plaintiff could stand, sit, or walk (Tr. 9-10). It appears that there may have been some deterioration of Plaintiff's condition after the

16

Date Last Insured. If this change has caused further limitation of Plaintiffs abilities, the appropriate remedy would be to file a new claim for SSI in light of the fact that her Date Last Insured has passed.

As the Commissioner points out, in assessing Plaintiff's credible degree of limitation, the ALJ did find that Plaintiff's severe limitations included fibromyalgia (Tr. 21). However, a diagnosis of fibromyalgia does not automatically equal a finding of disability. See Vance v. Comm'r of Soc. Sec., 260 F. App'x 801, 806 (6th Cir.2008) citing Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir.1996) for the proposition that "[s]ome people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority.")). While fibromyalgia does have minimal objective findings, see SSR 12-2p, the ALJ must still evaluate the objective evidence for this impairment *and the other impairments* that Plaintiff alleged. See 20 C.F.R. § 404.1529 (ALJ to evaluate objective evidence).[1]

The evidence from the period in question does not support Plaintiff's allegations of disabling limitations due to any impairment or combination of impairments. The ALJ properly considered the relevant evidence from the period at issue and adequately accounted for Plaintiff's supported degree of limitation by limiting her to a reduced range of light work (Tr. 23).

---

1 A diagnosis of fibromyalgia does not mean that the ALJ is prohibited from evaluating the objective evidence. In fact, the ruling specifically states that, "As in all claims for disability benefits, we need objective medical evidence to establish the presence of an MDI." SSR 12-2p, http://www.ssa.gov/OP_Home/rulings/di/01/SSR2012-02-di-01.html.

After determining Plaintiff's RFC, the ALJ compared it to Plaintiff's past work and determined that she could not perform any past relevant work (Tr. 27, 48). Thus, the ALJ acknowledged that the burden shifted to the Commissioner to produce evidence of other work existing in significant numbers that Plaintiff could perform based on her age, education, work experience, and RFC (Tr. 27).

To meet the Commissioner's burden at step five of the sequential evaluation, the ALJ utilized a vocational expert (Tr. 27-28). In response to a hypothetical question based on an individual of Plaintiff's age, education, work background, and RFC, the vocational expert testified that such individual could perform work existing in significant numbers including unskilled work as an office helper and ticketer in the textile carpet industry (Tr. 28, 48-50).

Because the hypothetical question included those impairments the ALJ found credible, and excluded those he discredited for legally sufficient reasons, the vocational expert's testimony that Plaintiff could perform work existing in significant numbers, is substantial evidence in support of the ALJ's determination. See Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512–13 (6th Cir. 2010) (VE's testimony in response to hypothetical question accurately portraying claimant's vocational abilities and limitations can provide substantial evidence to meet burden at step five).

I conclude Plaintiff retained the RFC to perform other work and was not under a disability as defined in the Social Security Act at any time through her date last insured. Substantial evidence on the record as a whole supports the ALJ's decision.

Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

    (1) The plaintiff's motion for summary judgment (Doc. 12) be DENIED.

    (2) The defendant's motion for summary judgment (Doc. 15) be GRANTED.

    (3) The case be DISMISSED. [2]

S /*William B. Mitchell Carter*/
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).